UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL A. MADERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  3:20 C 50062 |
| | ) | |
| OWEN MCGUINNESS, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Plaintiff Daniel Madero was arrested and briefly detained after a traffic accident in February 2018.  Madero believes that Officer Owen McGuinness, one of the four traffic officers involved in his arrest, lacked probable cause for that arrest.  Madero sued McGuinness for violation of his Fourth Amendment rights under 42 U.S.C. § 1983, but Judge Reinhard of this court granted summary judgment in favor of McGuinness [76], and the Court of Appeals affirmed on April 1, 2024.  *Madero v. McGuinness,* 97 F.4th 516, 518 (7th Cir. 2024).  Madero asserts he has new evidence in support of his claim against McGuinness and moves for relief from judgment [91] pursuant to Federal Rule of Civil Procedure 60(b).  For the following reasons, Madero's motion is denied.

## BACKGROUND

Judge Reinhard's order granting summary judgment in favor of Defendant McGuinness sets out the facts underlying Madero's claim in detail.  (*See* Summ. J. Order [76] at 1–4.)  At around 4:00 a.m. on February 9, 2018, McGuinness and three other officers responded to a reported hit-and-run traffic accident in Rockford, Illinois.[1]  (*Id*. at 1, 3.)  After arriving at the scene, the officers took statements from three witnesses driving separate vehicles—Bret Daehler, John

---

[1]         The summary judgment ruling sets the date of this incident as February 9, 2017, but this appears to be a typo; Madero's complaint alleges that the incident took place on that date in 2018.  (Compl. [1] ¶¶ 7, 23; *see also Madero,* 97 F.4th at 518 (7th Cir. 2024).

Keck, and Brandon Philbee. (*Id.* at 2–3.) All three witnesses asserted that Madero, driving a dark-colored sedan, had gone through a red light into an intersection, hit Philbee's vehicle, and then fled the scene in his car; Daehler, Keck, and Philbee gave chase in their cars, and eventually succeeded in boxing in Madero's car after he stopped at a red light (apparently having ended up at the very same intersection where the initial accident took place). (*Id.* at 2.) Philbee and Daehler also told McGuinness that Madero had stabbed Philbee in the face with a key, and McGuinness observed blood dripping from Philbee's upper cheek. (*Id.* at 3.) Following this confrontation, Madero, who also appeared to be injured, was taken to the hospital. (*Id.*)

McGuinness prepared a two-page probable cause statement for Madero's arrested and presented it to Assistant State's Attorney (ASA) Jessica Maveus, who approved an aggravated battery charge against Madero; Madero was arrested by another officer while still at the hospital and taken to jail around 5:00 a.m. (*Id.*); *Madero*, 97 F.4th at 519–20. A few hours after the arrest, however, two of the witnesses (Daehler and Keck) contacted the police to recant their previous statements, stating that they were no longer sure that Madero's vehicle was the one involved in the hit-and-run. (Summ. J. Order at 3–4.) After further investigation, another ASA, Wendy Larson Bennet, dismissed all charges against Madero and he was released from jail that evening at about 5:00 p.m. (*Id.* at 3.)

Maderos sued McGuinness (but not the other officers) under § 1983, alleging that McGuinness lacked probable cause for the statements he made to ASA Maveus. (*Id.* at 4.) The court granted summary judgment in favor of McGuinness, however, citing the statements by Daehler, Keck, and Philbee at the scene of the accident identifying Madero as the hit-and-run driver. (*See id.* at 5–6, 9.) On appeal, the Seventh Circuit agreed, rejecting Madero's contention that "slight disagreements in testimony" dispelled probable cause. *Madero*, 97 F.4th at 524.

On August 2, 2024, Madero moved for relief from judgment, attaching six documents he claims constitute "new evidence." (Pl. Mot. [91] at 4–6.) The first document (Pl. Ex. A [91-1])

2

appears to be an excerpt from the police report from the day of his arrest. Four documents (Pl. Exs. B–E [91-2–5]) appear to be four sequential pages excerpted from an unfiled and unsigned version of the criminal complaint against Madero, including an unsigned version of the McGuinness' probable cause statement. Madero claims that discrepancies between the unsigned criminal complaint in his possession and the signed criminal complaint previously entered in the record (Ex. 8 to Def.'s 56.1 Statement) show that McGuinness submitted a "forged" criminal complaint in his motion for summary judgment. (*See* Pl. Reply [102] at 3–4.) Madero claims that he received (presumably from the Rockford Police Department) and printed Exhibits A–E on February 18, 2020, a week after he filed his complaint in this case. (Pl. Mem. [95] at 1.)

The sixth document (Pl. Ex. F [91-6]) is a print-out of various text messages exchanged between McGuinness and other officers on the night of Madero's arrest. The messages include McGuinness's summary of Madero's statement of events. (*Id.* at 12.) Madero claims that these messages set forth "plaintiff's real statement that shows Madero was attacked" by Daehler, Keck, and Philbee, whose version of the story relied on by McGuinness in making the arrest. (Pl. Mot. at 4–5.) Though Madero does not explain the provenance of this document, McGuinness reveals that Madero received it in response to a Freedom of Information Act ("FOIA") request on January 12, 2022. (Def. Resp. [97] at 24.) Each page of Exhibit F is dated "1/12/2022."

Finally, Madero attaches to his Reply brief interrogatory responses he received from Daehler, Keck, and their shared employer K-Kap Toppers, Inc. ("K-Kap Toppers") in discovery for a lawsuit that Madero filed against Daehler, Keck, Philbee, and K-Kap Toppers, Inc. in Illinois court.[2] (Pl. Reply [102] at 128–153.) Madero argues that these interrogatory responses prove

---

[2] The case, *Madero v. Philbee*, No. 2019-L-41 (Ill. Cir. Ct.), was filed in February 2019 in the 17th Judicial Circuit Court of Illinois (which covers Winnebago and Boone Counties). (*See* Pl. Mot. at 3.) Madero has not described the allegations or legal theories of his state court lawsuit; as of this writing, the case appears to be pending. *See Case Lookup: 2019-L-0000041, Daniel A. Madero vs. Brandon L. Philbee, et al.*, WINNEBAGO CNTY. 17TH JUD. CIR. CT., https://fce.wincoil.us/fullcourtweb/civilCase.do?PageSize=10&PageNumber=1&pageAction=litig

3

that "the three individuals [Philbee, Keck, and Daehler] involved in the attack and attempted murder on [Madero] all worked together that night," but does not cite to any specific pages or answers in the documents. (*See id.* at 3.)

## DISCUSSION

Relief from judgment under Rule 60(b) "is an extraordinary remedy that is to be granted only in exceptional circumstances." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010) (quoting *Dickerson v. Bd. of Educ.*, 32 F.3d 1114, 1116 (7th Cir. 1994)). Of relevance to Madero's instant motion are Rule 60(b)(2) and Rule 60(b)(3).[3] Rule 60(b)(2) provides relief from final judgment if the movant presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). Rule 60(b)(3) provides relief from final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). Madero argues that the evidence that he now presents in his motion proves that McGuinness lacked probable cause for Madero's arrest and that McGuinness's prior submissions to the court were "forged." (*See* Pl. Reply at 3–4.) But, as the court explains, the evidence Madero presents does not justify the extraordinary remedies of Rule 60(b)(2) or 60(b)(3).

## I.      Rule 60(b)(2)

The Seventh Circuit has articulated five prerequisites that new evidence must satisfy for a movant to obtain relief from judgment under Rule 60(b)(2): (1) the movant discovered the

---

antDetail&SortOrder=asc&index=0&SortColumn=type&LitigantId=8396982 (last visited Mar. 31, 2025).

[3]      As McGuinness observes, Madero does not explicitly state which provision(s) of Rule 60(b) he is seeking relief under. At some places in his briefing, he refers to Exhibits A-F as "new information," sounding in subsection (2). (*See e.g.* Pl. Reply at 3 ("I am providing new information . . . .")) In other places, he refers the documents as presenting evidence of fraud, sounding in subsection (3). (*See id.* ("I'm adding all the evidence that they forged . . . .")) The court thus considers whether the evidence brought forth in Plaintiffs' motion can justify relief under either subsection.

evidence following the judgment; (2) the movant exercised due diligence to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result. *Fields v. City of Chicago*, 981 F.3d 534, 554 (7th Cir. 2020) (citing *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999)).

Most of what Madero relies on as "new information" fails under the first prong of this test. Madero received and printed Exhibits A-E on February 18, 2020, eight days after he filed his complaint against McGuinness and years before Judge Reinhard granted summary judgment on June 27, 2023.[4] Not only were these documents discovered well before judgment was entered— they were in fact already in the record before Judge Reinhard. Exhibit A is a page extracted from a City of Rockford Police Report Madero previously submitted in responding to McGuinness's motion for summary judgment. (Ex. 1 to Pl. Opp. to Def. Mot. for S.J. [73-1].) Exhibits B–E constitute an unsigned copy of Winnebago County's Criminal Complaint for aggravated battery against Madero, previously submitted by McGuinness in his Local Rule 56.1 Statement of Undisputed Material Facts. (Ex. 8 to Def.'s 56.1 Statement.) Madero's attached Exhibit F was not previously entered into the record, but he had access to those texts as of January 12, 2022. (Def. Resp. at 33; Pl. Reply at 2.) None of these exhibits can support a Rule 60(b)(2) motion, as they were available to Madero many months before entry of summary judgment.

That leaves the interrogatory answers provided by Daehler, Keck, and K-Kap Toppers. Madero contends these documents constitute new evidence acquired after entry of judgment in his federal case. (Pl. Reply at 3, 128-153.) True, Madero appears to have received those answers only in 2024, as part of his state court litigation against Daehler, Keck, Philbee, and K-Kap Topper. (*See* Pl. Reply at 136, 146, 153.) But Madero knew the identities of Daehler, Keck, and Philbee

---

[4] These documents were also included in McGuinness's Answers to Interrogatories, produced to Madero in 2021, and are identified by Bates stamps COR1, COR54 – COR57. (Def. Resp. at 14-15.)

during the time his federal case was pending; he included their names in his Rule 26(a)(1)(A) disclosures in this case and could have sought information from them (including the name of their employer(s)) at any time while his federal case was pending.  (*See* Def. Resp. at 7–8.)

In any event, the court notes that nothing about the information from these witnesses is "material" to Madero's claims against McGuinness.  In Madero's view, these interrogatory responses show that Daehler, Keck, and Philbee "all worked together that night and were doing work for the city of Rockford, Illinois," but Madero does not explain how the responses establish an unlawful conspiracy with McGuinness in particular or otherwise undermine McGuinness's probable cause determination.  The interrogatory responses might be relevant in Madero's case against Daehler, Keck, Philbee, and K-Kap Toppers, but they are not material to the finding of probable cause for Madero's arrest in the case at hand.

## II.    Rule 60(b)(3)

Madero also seeks relief from judgment under Rule 60(b)(3).  That requires the party seeking relief to "show that she has a meritorious claim that she was prevented from fully and fairly presenting at [summary judgment] as a result of the adverse party's fraud, misrepresentation, or misconduct."  *Wickens*, 620 F.3d at 758–59 (internal citations omitted).  "A party seeking to set aside a judgment under Rule 60(b)(3) . . . must prove fraud by clear and convincing evidence."  *Id*. at 759.  Madero's evidence of "fraud" is limited to discrepancies between the unsigned criminal complaint he received on February 18, 2020, and the version of the same complaint ultimately submitted by McGuinness in support of his motion for summary judgment.  The unsigned criminal complaint appears to be a first draft; it is not dated or notarized, and each page is stamped with the word "unapproved."  (*See* Exs. B–E; Ex. 8 to Def. Rule 56.1 Statement.)  Madero draws the conclusion from this document that a criminal complaint was never actually filed against him, and that the signed and dated version submitted by McGuinness is a "forgery."  (Pl. Reply at 3.)  The fact that the City of Rockford produced an unsigned draft in

6

response to Madero's FOIA request does not prove, as Madero appears to believe, that the criminal prosecution was fraudulent. The court is uncertain what kinds of information Madero requested from the City of Rockford, whether Madero specifically requested a copy of the (ultimately withdrawn) criminal complaint, or whether the City confirmed that no signed complaint exists. Regardless of what Madero requested, however, there is nothing suspicious about a public official's preparation of an unsigned first draft of a charging document.

Madero also expresses suspicion that the signed copies of the criminal complaint included in the record were backdated or otherwise forged. (Pl. Mem. at 1.) Although the criminal complaint was signed by an Officer Michael Meehan on February 9, 2018, Madero points out that the reviewing court's finding of probable cause for his arrest is dated to February 10, 2018. (*Id.*; Ex. 8 to Def. Local Rule 56.1 Statement at 1, 4.) Madero claims this is suspicious because he believes a snowstorm on Friday, February 9, 2018 caused the Winnebago County court to close and that the court did not reopen until Tuesday February 13, 2018 after the Abraham Lincoln holiday. (Pl. Mem. at 1.) This court does not share Madero's suspicions. Although February 10, 2018 was a Saturday and the Winnebago County courthouse was very likely closed, it is not unusual for police officers or judges to work outside of normal business hours, whether in their chambers or from their homes.

Finally, even if the court were to accept Madero's claims as true, he makes no attempt to argue that the alleged "forgery" prevented him from "fully and fairly presenting" his case at summary judgment. *See Wickens*, 620 F.3d at 759. It is undisputed that the charges against Madero were dropped just hours after they were brought on February 9, 2018, and that McGuinness' involvement in the investigation concluded when he submitted a probable cause statement to ASA Maveus on February 9, 2018. (*See* Summ. J. Order at 3.) Whatever may have happened to the criminal complaint on February 10, there is no evidence that McGuinness was involved, and the question of whether a criminal complaint was ever *actually* filed against Madero

bears little on the central question at summary judgment: whether McGuinness had probable cause for Madero's arrest in the first place. *See Madero*, 978 F.4th at 524. Madero had a full opportunity to address this question at summary judgment and on appeal and presents no "exceptional circumstances" that justify reopening this case.

### III. Case Law Cited by Madero

As explained above, Plaintiff has not established a basis for relief from judgment under Rule 60. Before concluding, the court comments briefly on two cases Madero has cited in support of his motion: *People v. Whitehead*, 2023 IL 128051, 217 N.E.3d 976 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Pl. Mem. at 2.) It is unclear how either of these cases are relevant to Plaintiff's Rule 60(b) motion. *Bivens* establishes a federal cause of action against federal agents; but McGuinness is not a federal officer. *Whitehead,* decided in 2023*,* establishes that, under Illinois law, the front stoop of a residence is not a "public place of accommodation or amusement" under the meaning of Illinois' aggravated battery statute. *Whitehead*, 2023 IL 128051, ¶ 12, 217 N.E.3d at 979. The issue was relevant in *Whitehead* because the defendant, who was arrested for conduct that took place at his own front door, had been charged with the specific offense of aggravated battery in *a place of public accommodation*. *Id.* ¶ 1, 217 N.E.3d at 978. The Illinois Supreme Court held that defendant's front door is not a "public place of accommodation," and reversed the defendant's conviction. *Id.* Plaintiff Madero was not arrested for conduct at his front door, and nothing in the facts or reasoning of *Whitehead* undermines McGuiness's determination of probable cause for Madero's arrest.

**<u>CONCLUSION</u>**

Plaintiff's motion for relief from judgment [91] is denied.


ENTER:


Dated:  March 31, 2025                          _____
                                                REBECCA R. PALLMEYER
                                                United States District Judge